231 P.3d 1010

In the Matter of the Petition for an Alternative or Peremptory writ of Prohibition.

Patrick Brian HENRY, Chris L. Henry, Vince E. Carlson, Cole Shane Odom, Eugene L. Rice, Al Holl, Doug Bunch, Royce Neil Fifer, David Parrie, and Bob Prigg, qualified electors of the State of Idaho, for and on behalf of themselves and all qualified electors of the State of Idaho, Petitioners,

v.

The Honorable Ben YSURSA, Secretary of State of the State of Idaho, Respondent.

and

Idaho Republican Party, Intervenor,

No. 35580.

Supreme Court of Idaho, Boise, September 2008 Term.

Sept. 24, 2008.

Dennis J. Sallaz, Boise, for petitioners.

Charles F. McDevitt, Boise, for intervenor.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Michael S. Gilmore, Deputy Attorney General, argued.

EISMANN, Chief Justice.

This is a petition for a writ of prohibition to keep the Secretary of State from placing the name of Rex Rammell on the 2008 general election ballot for the office of United States Senator. Because the Secretary of State is required by statute to place Rammell's name on the ballot, the Secretary will not be exceeding his powers in doing so. Therefore, we deny the petition for a writ of prohibition.

## I. FACTS AND PROCEDURAL HISTORY

On March 19, 2008, Rex Rammell filed with the Secretary of State a declaration of candidacy as an independent candidate for the office of United States Senator in the general election to be held on November 4, 2008. The requirements for being placed on the ballot as an independent candidate include that Rammell state that he has no political party affiliation and that he provide petitions signed by at least one thousand qualified electors. I.C. § 34–708(2). The petitions signed in each county are submitted to the county clerk of that county, who must then certify to the Secretary of State the number of signatures thereon that are those of qualified electors. I.C. §§ 34–708(3) & 34–1807. A "qualified elector" is "any person who is eighteen (18) years of age, is a United States citizen and who has resided in this state and in the county at least thirty (30) days next preceding the election at which he desires to vote, and who is registered as required by law." I.C. § 34–104.

In his declaration of candidacy, Rammell stated under oath that he was "not a member of any Political Party." He submitted 159 petitions in support of his candidacy, and the respective county clerks certified a total of 1007 signatures as being those of qualified electors.

On August 4, 2008, Patrick Brian Henry, Chris L. Henry, Vince E. Carlson, Cole Shane Odom, Eugene L. Rice, Al Holl, Doug Bunch, Royce Neil Fifer, David Parrie, and Bob Prigg (Petitioners) petitioned the Secretary of State in writing asking him to refrain from placing Rammell's name on the 2008 general election ballot for the office of United States Senator. They alleged he was not qualified to be an independent candidate for two reasons: (1) less than 1,000 of the signatures on Rammell's petitions were actually those of qualified electors and (2) Rammell had consistently stated that he was affiliated with the Republican Party.

The petitions were pre-printed forms provided by the Secretary of State. Each petition consisted of one page with lines for up to ten signatures. Each line had a space designated for the person's signature, his or her printed name, his or her residence address, and the date he or she signed the petition. The person obtaining signatures on a petition was required to sign an affidavit at the bottom of the petition stating:

> That I am a resident of the State of Idaho and at least eighteen (18) years of age: that every person who signed this sheet of the foregoing petition signed his or her name thereto in my presence: I believe that each has stated his or her name, post-office address and residence correctly, that each signer is a qualified elector of the State of Idaho, and the county of _____.

In support of their allegation that Rammell had not obtained the signatures of 1,000 qualified electors, the Petitioners presented documents showing: that three signatures on the petitions were forgeries; that ten signers were not registered to vote when they signed the petitions; that eighteen signers were not registered to vote at their respective addresses written on the petitions; that one person had signed twice and been counted both times; that five signers failed to list a residence address on the petition; that one signer had failed to list his complete residence address; and that county clerks had miscounted the number of qualified electors on two petitions, resulting in them certifying two signers too many. The Petitioners also alleged that two petitions containing a total of fifteen signatures should be disqualified because the persons collecting the signatures

had falsely stated that all of those signing had done so in their presence. In addition, they alleged that seven petitions containing sixty-three signatures should be disqualified because the petitions had not been properly filled out regarding the candidate's name, office sought, and date of the election.

In support of their allegation that Rammell was affiliated with the Republican Party, the Petitioners presented documents showing that Rammell declared himself to be a Republican both before and after he filed his declaration as an independent. In FEC Form 2 filed with Secretary of the United States Senate on October 17, 2007, Rammell stated that his party affiliation was Republican. On October 22, 2007, Rammell filed FEC Form 1 with the Secretary of the Senate to form the "Rex Rammell for United States Senate" election committee, again stating that his party affiliation was Republican. Rammell continued using that election committee to solicit donations and finance his campaign after filing his declaration as an independent candidate on March 19, 2008. On June 6, 2008, Rammell filed new FEC Forms 1 and 2 stating that his party affiliation was independent. The Petitioners also provided copies of Rammell's campaign materials that included the Republican Party logo and a television interview on June 28, 2008, during which Rammell stated, "I'm the real Republican in the race but I'm not the nominee" and "I'm not really a traditional independent. I am really a Republican running as an independent."

After first consulting with the Attorney General, the Secretary of State denied the Petitioners' request in a letter dated August 6, 2008, in which he stated that he lacked statutory authority to keep Rammell's name off the ballot. On August 12, 2008, Petitioners filed in this Court a petition for an alternative or peremptory writ of prohibition asking this Court to prohibit the Secretary of State from placing Rammell's name on the general election ballot. The Idaho Republican Party sought and was granted permission to intervene, and it argued in support of the requested writ of prohibition. The Secretary of State filed a written response, and the parties presented oral argument on Sep-

tember 3, 2008. The same day, this Court issued an order denying the requested writ of prohibition. In that order, we stated that a written opinion would follow.

## II. ANALYSIS

This Court has original jurisdiction to issue writs of prohibition. Idaho Const. Art. V, § 9. "The writ of prohibition is not a remedy in the ordinary course of law, but is an extraordinary remedy." *Maxwell v. Terrell,* 37 Idaho 767, 774, 220 P. 411, 413 (1923). Before this Court will issue such writ, two contingencies must be shown: "the tribunal, corporation, board, or person is proceeding without or in excess of the jurisdiction of such tribunal, corporation, board, or person, and that there is not a plain, speedy, and adequate remedy in the ordinary course of law." *Olden v. Paxton,* 27 Idaho 597, 600, 150 P. 40, 41 (1915). The word "jurisdiction" when used in reference to a writ of prohibition includes power or authority conferred by law. *Crooks v. Maynard,* 112 Idaho 312, 319, 732 P.2d 281, 288 (1987) (where administrative orders were within the "power and authority" of the administrative district judge, a writ of prohibition would not issue); *Stein v. Morrison,* 9 Idaho 426, 455, 75 P. 246, 256 (1904) (quoting from *Maurer v. Mitchell,* 53 Cal. 289, 292 (1878)) ("The word 'jurisdiction,' when used in connection with 'prohibition,' would be at once understood as being employed in the sense of the legal power or authority 'to hear and determine causes.'"). Jurisdiction is a question of law over which this Court exercises free review. *State v. District Court,* 143 Idaho 695, 699, 152 P.3d 566, 570 (2007).

The issue presented to this Court is not whether Rammell lied on his declaration of candidacy as an independent candidate, nor is it whether the county clerks incorrectly certified the number of registered voters who signed Rammell's petitions. The issue is simply whether the Secretary of State will be exceeding his powers if he places Rammell's name on the general election ballot.

The Secretary of State's obligation to place the name of an independent candidate on a general election ballot is spelled out in Idaho

Code § 34–708.[1] That statute provides that an independent candidate for statewide office is entitled to have his or her name placed on a general election ballot if: (a) the candidate has timely filed in the appropriate place a declaration of candidacy stating that he or she is an independent, declaring that he or she has no party affiliation, and declaring the office he or she seeks, and (b) the declaration is accompanied by petitions that county clerks have certified as containing at least 1,000 signatures of qualified electors. If these requirements have been met, "the proper officer [the Secretary of State in this instance] *shall cause* the name of each independent candidate who has qualified to be placed on the general election ballot." I.C. § 34–708(4) (emphasis added). "This Court repeatedly has construed the word 'shall' as being mandatory, not discretionary." *State v. Tribe*, 123 Idaho 721, 726, 852 P.2d 87, 92 (1993). *Accord, Paolini v. Albertson's Inc.*, 143 Idaho 547, 549–50, 149 P.3d 822, 824–25 (2006); *Simpson v. Louisiana–Pacific Corp.*, 134 Idaho 209, 212–13, 998 P.2d 1122, 1125–26 (2000). Thus, the Secretary of State has no discretion regarding placing Rammell's name on the ballot if the requirements of Section 34–708 have been met.

■ The record before us shows that Rammell has met those requirements. He timely filed in the appropriate place the required declaration as an independent candidate and his declaration was accompanied by petitions that county clerks had certified as containing at least 1,000 signatures of qualified electors. Therefore, the Secretary of State is required to place Rammell's name on the ballot. By doing so, the Secretary of State is not exceeding his powers. He is doing precisely what Idaho Code § 34–708(4) mandates.

Petitioners argue that the issuance of a writ of prohibition in this case is supported by this Court's issuance of a writ of prohibition in *Sullivan v. Cenarrusa*, Case No. 21490 (Sept. 2, 1994). There is a marked difference between the two cases. In *Sullivan*, an independent candidate for statewide office submitted petitions containing 1,278 signatures, all of which had been obtained in Ada County. The county clerk determined that 518 of those were invalid. The Secretary of State determined that the signers did not need to be certified as being qualified electors because he construed a former statute as eliminating that requirement if the number of signers was at least twenty per cent more than the number required to be placed on the ballot. This Court disagreed with that interpretation of the former statute. Because the number certified by the clerk as being qualified electors was less than the required 1,000, this Court issued a peremptory writ of prohibition commanding the Secretary of State to refrain from placing that candidate's name on the general election ballot. In the case before us now, the county

1. The statute provides as follows:
   (1) No person may offer himself as an independent candidate at the primary election.
   (2) Any person who desires to offer himself as an independent candidate for federal, state, district, or county office may do so by complying strictly with the provisions of this section. In order to be recognized as an independent candidate, each such candidate must file with the proper officer as provided by section 34–705, Idaho Code, a declaration of candidacy as an independent candidate, during the period specified in section 34–704, Idaho Code. Such declaration must state that he is offering himself as an independent candidate, must declare that he has no political party affiliation, and must declare the office for which he seeks election. Each such declaration must be accompanied by a petition containing the following number of signatures of qualified electors:
      (a) One thousand (1,000) for any statewide office;
      (b) Five hundred (500) for any congressional district office;
      (c) Fifty (50) for any legislative district office;
      (d) Five (5) for any county office.
   (3) Signatures on the petitions required in this section shall be verified in the manner prescribed in section 34–1807, Idaho Code.
   (4) If all of the requirements of this section have been met, the proper officer shall cause the name of each independent candidate who has qualified to be placed on the general election ballot, according to instructions of the secretary of state.
   Idaho Code § 34–1807 provides that the county clerk of the county in which the signatures on a petition were gathered shall certify the number of signatures on the petition that are those of qualified electors.

clerks have certified 1,007 signers of Rammell's petitions as being qualified electors.

■ Finally, Petitioners argue that the Secretary of State should have the implied or inherent power to determine whether Rammell truthfully stated that he was not a member of any political party in his declaration of candidacy and whether the county clerks correctly certified the number of qualified electors who signed Rammell's petitions. They contend that this power comes from that portion of Idaho Code § 34–201 which states, "The secretary of state is the chief election officer of this state, and it is his responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws."

Before addressing this argument, we will first address the distinction between a writ of prohibition and a writ of mandamus. In *Stein v. Morrison*, 9 Idaho 426, 455, 75 P. 246, 256 (1904) (quoting from *Maurer v. Mitchell*, 53 Cal. 289, 292–93 (1878)), this Court explained that distinction as follows:

> In prohibition it must be shown to the court that the inferior court or person has exceeded the powers conferred by law, and the court intervenes to prevent further proceedings without or in excess of such power. *Mandamus* may be resorted to whenever an officer or person refuses to perform a duty enjoined by law, although the act may have been an isolated one, disconnected with any proceedings leading up to that which the recalcitrant official or individual refused to perform. In what sense, then, is the word 'counterpart' employed in the first clause of the section [identical to I.C. § 7–401]? As it cannot be given the meaning of the exact reverse or opposite without doing away with the limitation contained in the second clause, whereby prohibition is confined to the cases in which the court, corporation, officer, or person has already exceeded the powers conferred by law, it must have been used in the more general sense that prohibition is the opposite, in that it *arrests* while *mandamus* commands action.

For the requested writ of prohibition to issue, the Petitioners must show that the Secretary of State will exceed the powers conferred upon him by law by placing the name of Rex Rammell on the ballot. As addressed above, he will not be exceeding his powers by doing so; he will simply be complying with the mandate of Idaho Code § 34–708.

If, as the Petitioners contend, the Secretary of State has the implied or inherent power to determine the truthfulness of a declaration of candidacy or the accuracy of the certifications done by the county clerks and was refusing to exercise the power, then the appropriate extraordinary remedy would be a writ of mandamus to command that he perform such act, if "the law especially enjoins [such act] as a duty resulting from [his] office," I.C. § 7–302.

The duties of the Secretary of State regarding elections are prescribed by statute. The Secretary of State has the responsibility "to obtain and maintain uniformity in the application, operation and interpretation of the election laws" and to provide information "regarding voter registration procedures and absentee ballot procedures to be used by absent uniformed service voters and overseas voters" in order to comply with Section 102 of the Uniformed and Overseas Citizens Absentee Voting Act. I.C. § 34–201. Idaho Code Sections 34–202, 34–203, and 34–204 specify actions the Secretary of State is to undertake "[i]n carrying out his responsibility" under Section 34–201. He must "cause to be prepared and distributed to each county clerk detailed and comprehensive written directives and instructions relating to and based upon the election laws as they apply to elections, registration of electors and voting procedures which by law are under the direction and control of the county clerk." I.C. § 34–202. He must "assist and advise each county clerk with regard to the application, operation and interpretation of the election laws as they apply to elections, registration of electors and voting procedures which by laws are under the direction and control of the county clerk." I.C. § 34–203. He must "cause to be organized and conducted at convenient places and times in this state at least three (3) conferences on the administration of the election laws" for the county clerks. I.C. § 34–204. Finally, Idaho Code

§ 34–205 provides that the Secretary of State must "[p]repare and cause to be printed, in appropriate and convenient form, periodic compilations and digests of the election laws"; he must distribute to the county clerks in appropriate quantities "copies of such compilations and digests and the sample form of such supplies and materials necessary to conduct elections as the secretary of state considers appropriate, including poll books, tally sheets, return sheets and abstract of vote sheets"; and he must "[m]ake such compilations and digests available for distribution, free or at cost, to interested persons."

The administration of election laws is under the general supervision of the county clerks. "[E]ach county clerk shall exercise general supervision of the administration of the election laws by each local election official in his county for the purpose of achieving and maintaining a maximum degree of correctness, impartiality, efficiency and uniformity in such administration by local election officials." I.C. § 34–206. See also I.C. §§ 34–207 through 34–211. The duties of the county clerks include certifying the number of qualified electors who have signed petitions in support of independent candidates. I.C. §§ 34–708, 34–708A & 34–1807.

There is nothing in the applicable statutes indicating that the Secretary or State has any inherent or implied power or duty to disregard or correct the certifications of qualified electors made by the county clerks. His powers and duties with respect to elections are statutory. Any such inherent or implied power or duty would directly conflict with the provisions of Idaho Code §§ 34–708,

34–708A, and 34–1807. Likewise, there is nothing indicating that he has the inherent or implied power or duty to determine the truthfulness of the statements made in a declaration of candidacy as an independent candidate. The legislature has not given the Secretary of State that power or duty.

If a county clerk errs in certifying the signers as being qualified electors, or miscounts the number certified, that mistake can be brought to the county clerk's attention. If he or she agrees that a mistake was made, the clerk can send an amended certification to the Secretary of State. If the clerk refuses to correct the error, any person adversely affected can appeal to the district court pursuant to Idaho Code § 34–215.[2] Had the Petitioners followed this procedure, then any errors made by the county clerks in certifying the number of qualified electors who signed Rammell's petitions could have been corrected.

### III. CONCLUSION

Based upon the record before us, the Secretary of State is required by Idaho Code § 34–708 to place Rammell's name on the 2008 general election ballot for the office of United States Senator. The Secretary of State will not exceed his powers in doing so. Therefore, the petition for a writ of prohibition is denied.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem. TROUT concur.

2. The statute provides:
(1) Any person adversely affected by any act or failure to act by the secretary of state or a county clerk under any election law, or by any order, rule, regulation, directive or instruction made under the authority of the secretary of state or of a county clerk under any election law, may appeal therefrom to the district court for the county in which the act or failure to act occurred or in which the order, rule, regulation, directive or instruction was made or in which such person resides.
(2) Any party to the appeal proceedings in the district court under subsection (1) of this section may appeal from the decision of the district court to the supreme court.

(3) The district courts and supreme court, in their discretion, may give such precedence on their dockets to appeals under this section as the circumstances may require.
(4) The remedy provided in this section is cumulative and does not exclude any other remedy provided by law against any act or failure to act by the secretary of state or a county clerk under any election law or against any order, rule, regulation, directive or instruction made under the authority of the secretary of state or a county clerk under any election law.